**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

MAR 2 2026 AM 9:48
FILED - USDC - FLMD - TPA

**DIWANN MATHIS**

    **Plaintiffs,**

**v.**                                          Case No. 8:26-cv-557-WFJ-TGW

**AML SERVICES CORP.**

    **Defendants.**

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff DiWann Mathis, proceeding pro se, brings this action against

Defendant AML Services Corp. for violations of the Fair Housing Act and Florida

law, and alleges as follows:

**I. PARTIES**

1. Plaintiff DiWann Mathis is an individual residing at 4015 Pine Street,

1


$405
TPA73835

Seffner, Florida 33584. Plaintiff is the father of two minor children, ages 15 and 16, who reside with him at the Property. Plaintiff's household includes a child who has suffered traumatic brain injury.

2. Defendant AML Services Corp. ("AML") is a Florida corporation engaged in property management and rental operations in Hillsborough County, Florida. AML's sole principal and registered agent is Alain Lopez, who personally owns the real property at 4015 Pine Street, Seffner, Florida 33584 (the "Property") and who personally directed all decisions regarding its management at all relevant times.


## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims arising under the Fair Housing Act, 42 U.S.C. §§ 3604 and 3617.

4. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because they form part of the same case or

controversy.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this district and the events giving rise to Plaintiff's claims occurred in this district.

6. This action is related to Mathis v. Fiori et al., Case No. 8:25-cv-2949-KKM-CPT, pending before the Honorable Judge Kathryn Kimball Mizelle . That action arises from the same facts and involves overlapping parties and claims.

## III. FACTUAL ALLEGATIONS

### A. Plaintiff's Family and Protected Status

7. Plaintiff resides at the Property with his wife, Marketa Mathis, and their two minor children, ages 15 and 16. Plaintiff's family is a "family with children" as defined by the Fair Housing Act, 42 U.S.C. § 3602(k), and is a member of a class protected by § 3604.

3

8. Plaintiff's household includes a child who has suffered traumatic brain injury, making the family particularly vulnerable to housing instability and displacement.

B. Defendant's Knowledge of Plaintiff's Vulnerability

9. From October 2024 through April 2025—approximately six months— Plaintiff and his family experienced homelessness in Delaware and Florida, living in motels, extended stay facilities, and temporary housing after their previous landlord sold the property in which they resided.

10. Prior to entering the lease, Plaintiff disclosed to AML his family's recent history of homelessness, their desperate need for stable housing for their minor children, and their vulnerable financial situation.

11. AML had actual knowledge of Plaintiff's extreme vulnerability before entering the lease agreement. Because of the family's desperate circumstances, Plaintiff paid AML an additional month's rent beyond the standard first month and security deposit via Zelle transfer. AML accepted this payment knowing it came from a recently homeless family.

## C. The Lease and Rent Payments

12. On or about May 1, 2025, Plaintiff entered into a residential lease with AML for the Property at a monthly rent of $1,875.00.

13. On September 9, 2025, Plaintiff deposited $1,200.00 in cash into AML's Bank of America account at the branch at 816 Martin Luther King Jr. Boulevard, Seffner, Florida. The deposit was immediately credited to AML's account, as confirmed by bank transaction records.

14. On September 19, 2025, Plaintiff deposited the remaining $675.00 into the same account, completing full payment of September 2025 rent totaling $1,875.00. Both deposits were made within the lease's grace period.

15. AML received, accepted, and retained both deposits.

## D. Illegal Sewage Dumping and Plaintiff's Exercise of Housing Rights

16. In September 2025, the Property's septic system overflowed through an

uncapped access drain beneath the rear porch, releasing raw sewage into the yard where Plaintiff's minor children lived and played.

17. On approximately September 1, 2025, AML's maintenance worker responded to Plaintiff's report of the septic failure. Rather than removing the sewage through proper sanitation channels, the worker pumped raw sewage directly onto the Property's grass and yard, spreading human waste across the yard and fence line.

18. Plaintiff observed and recorded this illegal conduct on video. The worker observed that he was being recorded.

19. In the days following, Plaintiff submitted written repair requests to AML for remediation of the sewage contamination, rainwater intrusion through a gap beneath the rear door, and insect infestation caused by a torn front porch screen. These conditions created health and safety hazards for Plaintiff's household, including his two minor children.

20. AML denied all repair requests without inspection or explanation.

Following Plaintiff's documentation of the sewage dumping and his submission of repair requests, AML ceased responding to maintenance communications entirely.

21. Plaintiff's documentation of the sewage dumping and his submission of repair requests constituted the exercise of rights protected by the Fair Housing Act, including the right to oppose unlawful housing practices and to maintain safe and habitable housing for his family unit inclusive of minor children. These rights are protected regardless of whether Plaintiff expressly invoked the Fair Housing Act by name.

**E. The Retaliatory Eviction**

22. On September 16, 2025—fifteen days after Plaintiff recorded the illegal sewage dumping and seven days after Plaintiff deposited $1,200 in rent—AML, through its attorney Christophe Fiori and at the personal direction of its sole principal Alain Lopez, filed a complaint for eviction in Hillsborough County Court, Case No. 25-CC-040428, alleging non-payment of September 2025 rent.

23. The allegation of non-payment was false. AML had received and retained

$1,200.00 in rent seven days before filing. Lopez, as sole principal with access to AML's bank records, knew or should have known that rent had been deposited.

24. The eviction was not filed for any legitimate purpose of collecting rent. The timing—immediately following Plaintiff's documentation of illegal conduct and submission of repair requests, rather than following any rent collection timeline— demonstrates that the eviction was retaliatory.

**F. Continued Bad Faith After Filing**

25. On October 3, 2025, Plaintiff hand-delivered proof of payment and a copy of his Answer to AML's attorney, advising that rent had been paid in full and that AML's worker had been recorded dumping sewage.

26. On October 8, 2025, at AML's attorney's request, Plaintiff hand-delivered a Comprehensive Settlement Proposal containing photographic and video evidence of the sewage dumping and bank records documenting rent payments.

27. On October 13, 2025, Plaintiff filed additional proof of payment in the state

court record.

28. Despite receiving proof of full payment on three separate occasions—
October 3, 8, and 13, 2025—AML continued to pursue the eviction action,
demonstrating that the purpose of the eviction was retaliation, not rent collection.

## G. The Fraudulently Obtained Default Judgment

29. On October 10, 2025, AML's attorney filed a Motion for Default Judgment
despite having actual knowledge that Plaintiff had filed a timely Answer seven
days earlier on October 3, 2025.

30. On October 18, 2025, a Default Final Judgment for Possession was entered
based on the false representation that rent had not been paid, when in fact AML
had received and retained all rent payments.

## H. Injuries and Ongoing Harm

31. The Default Final Judgment remains on Plaintiff's record and has been

reported to credit bureaus and tenant screening services, causing continuing damage to Plaintiff's credit, rental history, and ability to obtain housing for his family.

32. The judgment impairs Plaintiff's ability to obtain alternative housing, effectively trapping Plaintiff in a landlord-tenant relationship with the entity that retaliated against him for asserting his family's housing rights.

33. Plaintiff and his minor children have suffered severe emotional distress, anxiety, fear, and psychological harm from the threat of renewed homelessness—particularly given the family's six-month history of homelessness and the presence of a child with traumatic brain injury.

34. The habitability defects—the gap beneath the rear door and the torn porch screen—remain unrepaired despite multiple requests, continuing to expose Plaintiff and his children to health and safety hazards.

35. AML's retaliatory conduct has chilled Plaintiff's willingness to exercise his Fair Housing Act rights in the future, as Plaintiff has learned that asserting his

family's right to safe housing triggers eviction.

## IV. COUNTS

### COUNT I

### RETALIATION AND INTERFERENCE

### 42 U.S.C. § 3617

36. Plaintiff re-alleges paragraphs 1 through 35.

37. Section 3617 of the Fair Housing Act prohibits intimidation, coercion, threats, or interference with any person in the exercise or enjoyment of rights protected by §§ 3603–3606.

38. Plaintiff exercised rights protected by §§ 3604(a) and 3604(b) when he documented conditions endangering his minor children, submitted repair requests for hazards affecting his household including two minor children, and opposed unlawful housing practices affecting his family.

39. AML took adverse action against Plaintiff by: (a) filing a retaliatory eviction based on false allegations within fifteen days of Plaintiff's protected activity; (b) continuing to prosecute the eviction after receiving proof that rent was paid in full; (c) seeking a default judgment despite knowing Plaintiff had filed an Answer; and (d) refusing to remediate habitability hazards.

40. There is a direct causal connection between Plaintiff's exercise of protected rights and AML's adverse actions. Before Plaintiff documented the sewage dumping and submitted repair requests, AML had no complaints about Plaintiff's tenancy. Within fifteen days of Plaintiff's protected activity, AML filed the eviction. AML offered no legitimate, non-retaliatory reason for the eviction—the stated basis (non-payment) was demonstrably false.

41. As a direct and proximate result of AML's violations of § 3617, Plaintiff has suffered: a fraudulent eviction judgment on his record; damage to his credit and rental history; severe emotional distress; ongoing threat of displacement; and chilling of his future exercise of Fair Housing Act rights.

DAMAGES: Compensatory damages, punitive damages, attorney's fees and

costs pursuant to 42 U.S.C. § 3613(c).

**COUNT II**

**FAMILIAL STATUS DISCRIMINATION**

**42 U.S.C. § 3604(a) and (b)**

42. Plaintiff re-alleges paragraphs 1 through 41.

43. Section 3604(a) makes it unlawful to make unavailable or deny housing based on familial status. Section 3604(b) makes it unlawful to discriminate in the terms, conditions, or privileges of rental housing based on familial status.

44. Plaintiff is the parent of two minor children residing in the household and is a member of a protected class under the Fair Housing Act.

45. AML's retaliatory eviction—filed after Plaintiff complained about conditions endangering his minor children—and AML's continued pursuit of eviction despite proof of full payment, made housing unavailable to Plaintiff's

family on the basis of Plaintiff's exercise of familial-status-related housing rights.

46. The Default Final Judgment makes housing constructively unavailable by damaging Plaintiff's credit and rental history, creating a barrier to obtaining alternative housing for his family with minor children.

47. As a direct and proximate result of AML's violations of § 3604, Plaintiff has suffered loss of housing security, damage to credit and rental history, severe emotional distress, and ongoing harm to his family's housing stability.

DAMAGES: Compensatory damages, punitive damages, attorney's fees and costs pursuant to 42 U.S.C. § 3613(c).

**COUNT III**

**RETALIATORY EVICTION**

**Fla. Stat. § 83.64**

48. Plaintiff re-alleges paragraphs 1 through 47.

49. Florida Statute § 83.64 prohibits a landlord from retaliating against a tenant who has complained about the landlord's failure to maintain premises or who has exercised rights under Chapter 83.

50. AML is the landlord. Plaintiff complained about illegal sewage dumping and habitability violations. Within fifteen days of Plaintiff's complaints, AML filed the eviction.

51. The eviction was not brought for any legitimate purpose. Plaintiff had deposited $1,200 into AML's account seven days before the filing, and AML received and retained all payments.

52. AML's retaliatory eviction caused Plaintiff damages including threat of displacement, emotional distress, and damage to rental history and credit.

DAMAGES: Compensatory damages, attorney's fees and costs.

**COUNT IV**

**FRAUD**

**(Florida Common Law)**

53. Plaintiff re-alleges paragraphs 1 through 52.

54. AML, through its attorney, made false representations of material fact to the Hillsborough County Court: specifically, that Plaintiff had failed to pay September 2025 rent.

55. This representation was false. AML had received and retained $1,875.00 in September 2025 rent via two cash deposits into its Bank of America account on September 9 and September 19, 2025.

56. AML made this representation with knowledge of its falsity—Lopez, as sole principal with access to AML's bank records, knew or should have known that rent had been deposited—and with intent that the Court rely upon it. The Court justifiably relied on this representation in entering the Default Final Judgment on October 18, 2025.

57. Plaintiff suffered damages including a fraudulent judgment on his record, damage to his credit and rental history, emotional distress, and ongoing threat of displacement.

DAMAGES: Compensatory damages to be determined at trial.

## COUNT V

## FLORIDA CONSUMER COLLECTION PRACTICES ACT

## Fla. Stat. § 559.72

58. Plaintiff re-alleges paragraphs 1 through 57.

59. AML's filing of an eviction based on false allegations of non-payment, while knowing rent had been received and retained, constitutes: (a) using fraudulent, deceptive, or misleading representations in connection with collection of a debt, in violation of § 559.72(9); (b) threatening action that cannot legally be taken, in violation of § 559.72(7); and (c) engaging in conduct the natural consequence of which is to harass, oppress, or abuse, in violation of § 559.72(18).

60. Pursuant to § 559.77, Plaintiff is entitled to actual damages, statutory damages, treble damages upon showing of willfulness, attorney's fees, and costs.

DAMAGES: Actual damages, statutory damages, treble damages, attorney's fees and costs.

**COUNT VI**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**(Florida Common Law)**

61. Plaintiff re-alleges paragraphs 1 through 60.

62. AML's conduct was extreme and outrageous. AML accepted extra money from a recently homeless family with a medically vulnerable child, then retaliated against that family for reporting unsafe conditions by filing a fraudulent eviction, and continued pursuing displacement despite receiving proof of full payment on three separate occasions.

18

63. AML acted intentionally or recklessly in causing severe emotional distress. AML had actual knowledge of Plaintiff's extreme vulnerability—including the family's six-month homelessness, the child's traumatic brain injury, and the family's desperate need for stable housing—before and during its retaliatory conduct.

64. Plaintiff has suffered and continues to suffer severe emotional distress, anxiety, fear, and psychological harm.

DAMAGES: Compensatory damages to be determined at trial.

**COUNT VII**

**BREACH OF IMPLIED WARRANTY OF HABITABILITY**

**(Florida Common Law)**

65. Plaintiff re-alleges paragraphs 1 through 64.

66. Florida law implies a warranty of habitability in every residential lease.

AML breached this warranty by: (a) failing to maintain the septic system; (b) pumping raw sewage onto the yard; (c) failing to repair the gap beneath the rear door; and (d) failing to repair the torn porch screen.

67. These conditions exposed Plaintiff and his minor children to health hazards and rendered portions of the Property uninhabitable.

DAMAGES: Compensatory damages to be determined at trial.

**COUNT VIII**

**NEGLIGENCE**

**(Florida Common Law)**

68. Plaintiff re-alleges paragraphs 1 through 67.

69. AML owed Plaintiff a duty to maintain the Property in a reasonably safe condition. AML breached this duty by having its worker pump raw sewage directly onto the yard on September 1, 2025, creating hazardous conditions.

70. This breach proximately caused damages including health risks, loss of use, emotional distress, and out-of-pocket expenses for cleanup.

DAMAGES: Compensatory damages to be determined at trial.

**COUNT IX**

**ABUSE OF PROCESS**

**(Florida Common Law)**

71. Plaintiff re-alleges paragraphs 1 through 70.

72. AML used the eviction process for an improper purpose: to retaliate against Plaintiff for documenting illegal conduct and to suppress evidence of AML's wrongdoing.

73. AML committed a willful act in the use of the process not proper in the regular conduct of the proceeding: specifically, seeking a default judgment through a motion filed on October 10, 2025, despite actual knowledge that Plaintiff had

filed a timely Answer on October 3, 2025. The default mechanism exists to protect against non-appearing parties; invoking it against a party who has appeared and answered is an improper use of process.

74. Plaintiff was injured by this abuse of process through the entry of a fraudulent judgment, damage to rental history and credit, emotional distress, and ongoing threat of displacement.

DAMAGES: Compensatory damages to be determined at trial.

## V. PUNITIVE DAMAGES

75. AML's conduct was willful, wanton, and malicious. AML had actual knowledge that Plaintiff's family had been homeless for six months, included a child with traumatic brain injury, and was in desperate need of stable housing. AML accepted extra money from this vulnerable family, then systematically destroyed that stability through illegal sewage dumping, retaliatory eviction based on false allegations, and continued prosecution despite proof of payment. Plaintiff

is entitled to punitive damages under 42 U.S.C. § 3613(c) and Florida law.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Enter judgment in Plaintiff's favor on all counts;

2. Award compensatory damages in amounts to be determined at trial;

3. Award punitive damages pursuant to 42 U.S.C. § 3613(c) and Florida law;

4. Award treble damages under Fla. Stat. § 559.77;

5. Order consolidation with Mathis v. Fiori et al., Case No. 8:25-cv-2949-KKM-CPT;

6. Award reasonable costs, attorney's fees, and pre- and post-judgment interest;

7. Grant such other relief as the Court deems just and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,
/s/ *DiWann M. Mathis*
DiWann M. Mathis, Pro Se
mathisadlitem@gmail.com

Dated: March 2, 2026

Mathis et al
4015 Pine Street
Seffner, FL 33583
Phone: (609) 431-3404